# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CRYSTAL D. RICKMAN**, | Case No. 6:12-cv-01201-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN,** Commissioner of Social Security, | |
| Defendant. | |

Richard F. McGuinty, McGuinty & Belcher Attorneys, P.O. Box 12806, Salem, OR 97301. Attorney for Plaintiff.

 S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600 Portland, OR 97201-2902; Catherine Escobar, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Crystal D. Rickman ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

# BACKGROUND

## A.  The Application

Plaintiff filed a Title II application for DIB and SSI on April 13, 2007, alleging disability beginning on July 31, 2006. AR 195-99, 200-02. Plaintiff is 35 years old, and between January and April of 2008, after the onset date of July 31, 2006, worked as a customer care representative at a tax service provider. AR 195, 266. Other past relevant work includes positions as a receptionist, office clerk, telemarketer, office specialist, sales representative, customer service representative, fast foods manager, grocery store checker, hand packager, and fast food worker. AR 94. Plaintiff alleges disability due to both physical and mental impairments. The alleged physical impairments include fibromyalgia, gastroesophageal reflux disease ("GERD"), asthma, migraine headaches, irritable bowel syndrome, right ankle sprain with chronic pain, and right shoulder pain with crepitus and popping with any motion. AR 88, 365-71. Plaintiff's alleged mental impairments include attention deficit/hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and depression. AR 359-64. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 85. An administrative hearing was held on May 10, 2010. AR 96. After leaving the record open for additional evidence, the ALJ found Plaintiff not to be disabled and ineligible for DIB and SSI. Plaintiff petitioned the Appeals Council for review of the ALJ's decision. AR 8. After considering additional medical records from the West Salem Clinic and the Mid-Valley Pain Clinic, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 8-9. Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010. AR 87. Plaintiff must establish disability on or before that date in order to be entitled to DIB. AR 85. The ALJ then applied the sequential process. AR 87-96. At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity after the alleged onset date of July 31, 2006. AR 87. Because the period of disability, however, included stretches of 12 months or more where Plaintiff did not engage in substantial gainful activity, the ALJ continued with step two of the five step analysis. *Id.* At step two, the ALJ found that Plaintiff's depressive disorder, ADHD, and personality disorder were severe impairments. AR 88. The ALJ concluded that Plaintiff's alleged physical impairments were non-severe. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 89.

The ALJ then determined that for the period beginning on the alleged onset date of July 31, 2006, through the date of the ALJ's decision on July 9, 2010, Plaintiff had the RFC to perform a full range of work at all exertional levels but with a nonexertional limitation to "unskilled work with no close public contact, only occasional coworker contact and no teamwork." AR 91. At step four, the ALJ determined that for this time period, Plaintiff was unable to perform past relevant work. AR 94. At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. *Id.* Thus, the ALJ found Plaintiff not to be disability, as defined by the Social Security Act, from July 31, 2006 through the date of the ALJ's decision. AR 95.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray,* 554 F.3d at 1226.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ denying her application for disability benefits. AR 85-96. Plaintiff argues that the ALJ erred in making the determination by: (1) failing to proffer certain evidence and admitting certain evidence after the hearing, thereby violating her right to due process; (2) incorrectly categorizing her RFC; (3) considering

erroneous vocational expert ("VE") testimony; and (4) improperly rejecting the lay witness testimony of Mr. Eric Hankins.

## A.  Violation of Procedural Due Process

Applicants for social security disability benefits are entitled to due process in the determination of their claims. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "An applicant for social security benefits has a property interest in those benefits." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and quotation marks omitted). Plaintiff contends that the ALJ violated her due process rights in two regards: first, by failing to proffer certain evidence and develop the record; and second, by considering evidence after the hearing. Both arguments are without merit.

### 1.  Failure to Proffer the Evidence and Develop the Record

Plaintiff argues that the ALJ violated her procedural due process rights by failing to (1) advise her of her right to object to evidence submitted into the record or (2) provide her with an opportunity to object to evidence. Plaintiff contends that the ALJ's actions contravene the procedures prescribed by the Hearing, Appeals, and Litigation Law Manual (HALLEX). *Id.* at 5-8 (citing I-1-9-1, I-2-6-58B). Because of this, Plaintiff argues, the ALJ's actions resulted in harmful error. *Id.* at 7-8.

The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (quotation marks omitted)). If the claimant is unrepresented, represented by a lay person, or suffers from a mental illness rendering the claimant unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

In the social security context, a claimant's due process rights are not violated when she fails to avail herself of the procedural protections available to her. *Richardson*, 402 U.S. at 404 ("Although the claimant complains of the lack of opportunity to cross-examine the reporting physicians, he did not take advantage of the opportunity afforded him . . . to request subpoenas for the physicians."). Further, even in the event of a due process violation, a claimant must demonstrate that the violation prejudiced her case. *Ludwig v. Astrue*, 681 F.3d 1047, 1055 (9th Cir. 2012).

Plaintiff first challenges the ALJ's development of the record based on the ALJ's alleged noncompliance with the HALLEX and submission of the Report of Investigation ("ROI") without notification. The ALJ, however, has no duty to follow the HALLEX, as it does not carry the force of law and is not binding on the agency. *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011); *see also Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007) (holding that a reviewing court will not "review allegations of non-compliance with [HALLEX's] provisions"). Even assuming that there was legal merit to Plaintiff's argument, she was in fact informed that the ROI was part of the evidence in the record. AR 155, 160. When her hearing was scheduled, she was advised of her right to view the evidence and both present and subpoena witnesses. AR 174, 176. In short, Plaintiff had sufficient "notice" and an "opportunity to be heard" to satisfy procedural due process. *Mathews v. Eldridge*, 424 U.S. at 346 (stating that an opportunity to submit evidence affords a sufficient procedural safeguard).

Plaintiff also challenges the ROI as inadmissible hearsay evidence. In *Richardson*, the Supreme Court held that hearsay may constitute substantial evidence, even where a claimant does not exercise her right to subpoena the witness. 402 U.S. at 402. In the context of an administrative hearing, there is "no administrative rule of automatic exclusion for hearsay evidence." *Calhoun v. Bailar*, 626 F.2d 145, 148-49 (9th Cir. 1980) (holding hearsay evidence admissible in the context of an administrative discharge case) (citing *Richardson*, 402 U.S. at 407-08). The use of hearsay evidence need only "be probative and its use fundamentally fair." *Id.* at 148. Because Plaintiff was given notice of the ROI, *see* AR 155, 160, and an opportunity to supplement the record at her hearing, *see* AR 130-33, the ALJ's ruling did not violate Plaintiff's due process rights.

### 2. Admission of Evidence After the Hearing

Plaintiff also argues the ALJ's admission of evidence after the hearing was a violation of her due process rights. AR 6-7. Plaintiff claims the ALJ did not provide her with an opportunity to address the additional evidence from the Marion County Psychiatric Crisis Center and the West Salem Clinic that were used as a basis to deny her claim. *Id.* at 7. For the reasons explained above, *supra*, non-compliance with the HALLEX does not create a valid basis to challenge the ALJ's decision.

Furthermore, the ALJ admitted these documents at the Plaintiff's request. AR 113-15. The Plaintiff thus fails to articulate how the inclusion of evidence at her request created harmful error or prejudice. *Ludwig*, 681 F.3d at 1054 ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). At the very least, Plaintiff would need to "show a substantial likelihood of prejudice." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010). Plaintiff does not contest the accuracy of the ALJ's

summary of the additional evidence. AR 89. This suggests that any potential error was itself harmless.

**B.  Plaintiff's Residual Functional Capacity**

Plaintiff also argues that the ALJ erred in establishing her RFC because the ALJ accorded too little weight to the examining physician Dr. Brumbaugh's opinion. Plaintiff also argues that the ALJ's determination excluded some of her non-exertional functional limitations. Each claim is addressed in turn.

**1.  Dr. Brumbaugh's Medical Opinion**

Plaintiff argues that the ALJ improperly considered two aspects of the examining physician Dr. Brumbaugh's medical opinion: first, by disregarding an allegedly exertional limit stating that the Plaintiff is "unlikely to be able to perform any work whatsoever," AR 367; and second, by not properly including a limitation to "light work," AR 367.

In evaluating medical opinions as evidence, generally an examining physician's opinion carries more weight than a non-examining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) *and* 20 C.F.R. § 404.1527(d)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted).

### a. Dr. Brumbaugh's Statement that Plaintiff is Unable to Complete "Any Work Whatsoever"

Plaintiff argues that the ALJ ignored Dr. Brumbaugh's statement regarding the Claimant's lack of ability to complete "any work whatsoever." AR 367 ("Based on the applicant's reported symptoms, she is unlikely to be able to perform any work whatsoever."). Plaintiff, however, ignores the next sentence in Dr. Brumbaugh's opinion, which states that based on "objective findings" the Plaintiff is capable of "at least" the full range of light work, should "avoid dust and extremes of hot and cold," and "demonstrated [the] ability to frequently climb, balance, stoop, bend, crouch, squat, kneel or crawl." AR 88, 367. This Court must read Dr. Brumbaugh's statements in the context of the Plaintiff's overall diagnostic picture, rather than simply favor select sentences in his report. *See Holohan*, 246 F.3d at 1205.

The ALJ gave weight to the entirety of Dr. Brumbaugh's "objective findings" rather than simply relying on the Plaintiff's uninspected, self-reported symptoms. AR 88, 367. Dr. Brumbaugh noted that Plaintiff's self-reported symptoms should be viewed "with the psychological opinion in mind" because the Plaintiff "may be a poor historian and in fact may not be a reliable or credible historian." AR 365. The ALJ found that the Plaintiff's statements concerning the "intensity, persistence and limiting effects" of reported physical symptoms were not credible. AR 91-92. The ALJ reasoned that there were "significant issues with the claimant's credibility including inaccurate reports of medical diagnoses, enrollment in community college and periods of incarceration as well as drug seeking behavior and admitted attempts at manipulation of others." AR 92. The ALJ's credibility determination is based on substantial evidence and supports the limited reliance on this portion of Dr. Brumbaugh's opinion. *See Tommasetti*, 533 F.3d at 1041.

### b. Dr. Brumbaugh's Statement that Plaintiff Should be Limited to "Light Work"

Plaintiff's second argument is that the ALJ improperly discredited Dr. Brumbaugh's statement that she was "capable of at least a full range of light exertion work." AR 88. Even assuming the ALJ "ignored" a portion of Dr. Brumbaugh's opinion, the ALJ had "specific and legitimate" reasons to do so. *See Bayliss*, 427 F.3d at 1216.

Plaintiff alleged an inability to work due to (1) fibromyalgia, (2) GERD, (3) asthma, (4) migraine headaches, (5) irritable bowel syndrome, (6) right ankle sprain, and (7) chronic pain and right shoulder pain with crepitus and popping with any motion. AR 88. Dr. Brumbaugh's medical opinion reported that the pain was "out of proportion to the objective physical findings." *Id.* In *Tommasetti*, the ALJ rejected the opinion of an examining physician because the opinion was "essentially a 'rehashing of claimant's own statements.'" 533 F.3d at 1040-41. Here, the ALJ found that "based on the inconsistencies noted in the examination, the undersigned is unable to credit any of the claimant's alleged complaints concerning alleged physical impairments." AR 88-89. Dr. Brumbaugh explained in his examination that the Plaintiff "may not be a reliable or credible historian" and cautioned against blindly relying on the Plaintiff's statements. AR 365. There is substantial evidence in the record supporting the ALJ's discrediting of the additional limitations reported by the Plaintiff.

The ALJ properly relied on the non-examining physician in determining the Plaintiff's RFC. An RFC assessment establishes "the most [a claimant] can still do despite [physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Here, the ALJ gave significant weight to the non-examining medical consultant Dr. Linda Jensen's opinion because Dr. Brumbaugh's "objective findings did not support the limitation to light exertion." AR 89. Dr. Brumbaugh assessed the Plaintiff as capable "of *at least* a full range of light work." AR 88

(emphasis added). Plaintiff's physical examination revealed few abnormalities. AR 366. Her gait was "unremarkable" and she had no "manipulative limitations" based on the exam. *Id.* at 366-67. Furthermore, limitations in her range of motion were categorized as "mild." AR 366. The ALJ concluded that limiting the Plaintiff to "light work" was simply not supported by objective medical findings. AR 89. Plaintiff's self-reported physical limitations provide the only basis to find a physical limitation, and the ALJ found such testimony not credible. *See supra* Section B.1.a. Plaintiff has not challenged the ALJ's evaluation of her credibility. Thus, there is substantial evidence in the record supporting the weight given by the ALJ to Dr. Jensen's and Dr. Brumbaugh's opinions. *See Tommasetti*, 533 F.3d at 1040-41.

Plaintiff also has failed to demonstrate that the ALJ's failure to include a "light work" limitation would have altered the disability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) ("[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case."). The ALJ's decision to ignore Dr. Brumbaugh's conclusion that Plaintiff is "capable of at least a full range of light work," AR 88, is harmless because it is "inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115 (quotation marks and citation omitted). Plaintiff did "not report any limitation with sitting," and Dr. Brumbaugh found her gait was "unremarkable." AR 366. Dr. Brumbaugh found that Plaintiff could both "stand and move about for at least six hours in a given eight hour workday, and sit for at least six hours in any given eight hour work day." AR 367. The ALJ determined that Plaintiff had the RFC to perform as a merchandise marker, classified as light work, and data-examination clerk, classified as sedentary work. AR 95; *see* DICOT 209.587-034, *available at* 1991 WL 671802; *and* DICOT 209.387-022, *available at* 1991 WL 671788. Therefore, even assuming Dr. Brumbaugh's "light work" determination was a valid RFC

limitation, the ALJ's RFC determination is not inconsistent with this interpretation of Dr. Brumbaugh's medical opinion.

### 2. Failure to Account for Plaintiff's Non-Exertional Limitations

Plaintiff contends that the ALJ erred by not accounting for all the limitations in the opinion of Dr. Peter LeBray, a non-examining physical consultant, in determining Plaintiff's RFC. Plaintiff argues that the ALJ excluded two relevant limitations: (1) that Plaintiff should be assigned to "unrushed tasks/routines and occasionally more familiar, complex activities of interest;" and (2) Plaintiff should "not closely engage others in the workplace" and is "[r]esposive to supportive lay supervision (not overly harsh, highly critical)." AR 398. The ALJ determined that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work with no close public contact, only occasional coworker contact and no teamwork." AR 91. This Court addresses in turn whether the ALJ properly accounted for the allegedly missing elements of Dr. LeBray's opinion.

An ALJ must consider "all of [a claimant's] medically determinable impairments," including "medically determinable impairments that are not 'severe,'" in making an RFC determination. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's findings, however, need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). As the court noted in *Turner*, in order for the RFC to be sufficiently inclusive, the ALJ need only incorporate the medical opinion into the RFC determination. 613 F.3d at 1223. Similarly, in *Valentine*, the court found that the full context of a medical opinion is relevant to determining if an ALJ ignored a limitation. 574 F.3d at 691 (analyzing the

entire context of the VE's opinion to conclude that "simple, paced (unrushed) tasks" did not exclude the claimant from completing more than just "simple" work given the "more in-depth Mental Residual Functional Capacity Assessment"). A medical opinion that is a recommendation, rather than an imperative, need not be adopted if an appropriate alternative is available. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

### a.    Failure to Include Plaintiff's Limitation on Completing Unrushed Tasks

Plaintiff contends that the RFC did not take into account Dr. LeBray's medical opinion that Plaintiff should not complete "unrushed tasks." AR 398. The ALJ gave Dr. LeBray's opinion "significant weight" because it was "consistent with the record as a whole." AR 93. The ALJ's RFC determination, however, did not track verbatim with Dr. LeBray's opinion.

In this case, the ALJ properly accounted for Plaintiff's limitations and considered Dr. LeBray's opinion. Dr. LeBray's limitation was for "unrushed tasks/routines and occasionally more familiar, complex activities of interest without close work with others in a nonhazardous setting." AR 93. Dr. LeBray's opinion was not simply limiting Plaintiff to "unrushed tasks"—he qualified his opinion and concluded that she was occasionally capable of more "complex activities." *Id.* The ALJ gave "significant weight" to Dr. LeBray's opinion and encompassed these considerations in the hypothetical given to the VE. AR 91.

As in *Valentine*, the Plaintiff's RFC is supported by Dr. LeBray's Mental Residual Functional Capacity ("MRFC") Assessment. 574 F.3d at 691; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that the "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony"). Dr. LeBray concluded that the Plaintiff was not significantly limited in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods." AR 397. The designation

"unskilled" work involves following simple instructions and routine tasks. *See* 20 C.F.R.

§ 416.968(a); SSR 85-15, *available at* 1985 WL 56857. There is no evidence that the "unskilled"

designation is inconsistent with a holistic view of the MRFC Assessment.[1]

### b. Failure to Consider Plaintiff's Limitation Regarding Supervision

Plaintiff alleges that the ALJ failed to account for Dr. LeBray's observation that Plaintiff

is "[r]esponsive to supportive lay supervision (not overly harsh, highly critical)." AR 398. The

ALJ's consideration of this statement was not only sufficient, but also unnecessary.

The ALJ is not required to incorporate medical opinions that are mere recommendations

and not an imperative. *Carmickle*, 533 F.3d at 1165. Where a recommendation is considered in

conjunction with an imperative, the ALJ may choose to rely primarily on an enumerated

limitation. *Id.* The ALJ is "entitled to draw inferences logically flowing from the evidence."

*Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Moreover, where evidence is

susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Id.* In

this case, Dr. LeBray's specific imperative was that Plaintiff: "Should not closely engage others

in the workplace. Responsive to supportive lay supervision (not overly harsh, highly critical)[.]

Can groom if inclined." AR 398. Taken in context, Dr. LeBray's imperative was that Plaintiff

have little interaction with others in the workplace. The RFC determination encompassed that

consideration. AR 91. Because the statement regarding lay supervision was a recommendation,

the ALJ was not required to include that as an explicit limitation. *Carmickle*, 533 F.3d at 1165.

The RFC is consistent with this recommendation and supported by substantial evidence. AR 91.

---

[1] The merchandise marker position is classified as unskilled work, *see infra* Section C.1, and the ALJ accepted, based on substantial evidence, the VE's testimony that the data-examination clerk position could qualify as unskilled work, *see infra* Section C.2.b.

## C.  Vocational Expert Testimony

Plaintiff challenges the ALJ's determination at step five of the sequential evaluation process. Plaintiff contends that the ALJ's decision cannot be sustained because the VE testimony conflicted with information in the DOT and the ALJ failed to resolve the conflict. Specifically with regard to the merchandise marker position, Plaintiff argues that the VE testimony conflicts with the people level set out in the DOT. Plaintiff also argues that the VE's testimony regarding the data-examination clerk position conflicts with the people, specific vocational preparation ("SVP") time, and reasoning levels set out in the DOT.

### 1.  Legal Standards

At step five, the burden shifts to the Commissioner to show that there exists work in significant numbers in the national economy that Plaintiff can perform. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the ALJ relies on a VE to meet this burden, the questions to the VE must be based on substantial evidence and may exclude limitations unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ "may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss*, 427 F.3d at 1218. VE testimony is not supported by substantial evidence if it is based on a defective RFC determination. *Valentine*, 574 F.3d at 690.

The "[*Dictionary of Occupational Titles* ("DOT")] is 'the best source for how a job is generally performed.'" *Carmickle*, 533 F.3d at 1166 (quoting *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)); *see also* SSR 00-4p, *available at* 2000 WL 1898704. The DOT,[2] however, is not the "sole source of admissible information concerning jobs." *Johnson v. Shalala*, 60 F.3d

---

[2] The DOT was published by the Department of Labor, and the latest edition, the Fourth, was last published in 1991. *See* Department of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), *available at* http:// www.oalj.dol.gov/libdot.htm. The Commissioner "has taken administrative notice of the Dictionary of Occupational Titles[.]" *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007).

1428, 1435 (9th Cir. 2008). The Commissioner "also uses testimony from vocational experts to obtain occupational evidence." *Massachi*, 486 F.3d at 1153. In the event that definitions in the DOT conflict with the testimony of a VE, "[n]either the DOT nor the [vocational expert] . . . evidence automatically 'trumps.'" SSR 00-4p; *Massachi*, 486 F.3d at 1153 (endorsing the rules in SSR 00-4p). An ALJ may consider VE testimony that contradicts the DOT so long as the record "contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. Persuasive evidence exists to support a deviation where "the [VE's] explanation for the conflict is reasonable" and there is "a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

### 2.  Plaintiff's Ability to Perform as a Merchandise Marker

Plaintiff contends the DOT "people" classification for a merchandise marker is inconsistent with the ALJ's RFC determination. An ALJ must inquire as to whether the VE's testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1152. The ALJ in this case asked the VE if the "testimony is in accordance with the Dictionary of Occupational Titles." AR 144. The VE responded that the testimony was consistent. *Id.*

The "people" classification for a merchandize marker is "taking instructions-helping" and qualified as "not significant." DICOT 209.587-034, *available at* 1991 WL 671802. The RFC determination, and hypothetical posed to the VE, provided for a person who "should have no close public contact and only occasional coworker contact, but with no team work." AR 142. Based on this hypothetical, the VE found that the Plaintiff would be able to function as a merchandise marker because they "work alone, independently." AR 143. Moreover, there is no apparent conflict between the DOT and Plaintiff's RFC. AR 91, 143. A merchandise marker does not have significant interaction with other persons, and the VE explained that Plaintiff

would work independently. *Id.* The ALJ's finding that Plaintiff could function as a merchandise marker is supported by substantial evidence. *See Osenbrock*, 240 F.3d at 1165.

### 3. Plaintiff's Ability to Perform as a Data-Examination Clerk

Plaintiff also challenges her ability to perform as a data-examination clerk. She contends that the VE's testimony regarding the data-examination clerk position conflicts with the people, specific vocational preparation ("SVP") time, and reasoning levels set forth in the DOT. For the foregoing reasons, the ALJ's reliance on the VE testimony regarding the data-examination clerk position is not inconsistent with the DOT.

#### a. The DOT People Level

Plaintiff's first challenge is without merit. The VE's finding that Plaintiff can function in a position with a "people" level requiring "taking instructions-helping" that is "not significant" is consistent with Plaintiff's RFC. AR 91, 143. For the reasons explained above, the ALJ's decision is supported by substantial evidence. *See Osenbrock*, 240 F.3d at 1165.

#### b. The DOT SVP Level

Plaintiff argues that the SVP level for a data-examination clerk is beyond that of "unskilled work" and that Social Security Ruling ("SSR") 00-4p bars VE testimony that is inconsistent with the DOT.

The ALJ posed a hypothetical to the VE and described a claimant who, *inter alia*, is "limited to unskilled work." AR 142. The VE identified the position of "data-examination clerk" that has an SVP of 3. AR 143. The VE concluded, however, that "publications from the Occupational Outlook Handbook indicate that this work can be learned in less than 30 days, ranging between an SVP 2 to 3, unskilled." AR 143-44. Pursuant to *Massachi*, 486 F.3d at 1152, the ALJ asked the VE whether her testimony was in "accordance with the Dictionary of Occupational Titles." AR 144. There is substantial evidence in the record supporting the ALJ's

reliance on the VE's testimony despite a potential conflict with the DOT. *Massachi*, 486 F.3d at 1153. The VE's explanation was reasonable and based on supplemental information from the Occupational Outlook Handbook. AR 143.

Plaintiff's next argues that the VE testimony "redefined" a regulatory term in contravention of SSR 00-4p. SSR 00-4p prohibits an ALJ from redefining regulatory terms. SSR 00-4p, *available at* 2000 WL 1898704, at *3 ("Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling."). The ALJ did not redefine "unskilled work" as requiring more than 30 days to learn, but instead, noted that a data-examination clerk position with an SVP 2 fell within the regulatory definition of "unskilled work." AR 95; *see also* SSR 00-4p, *available at* 2000 WL 1898704, at *3 (explaining that "unskilled work corresponds to an SVP of 1-2"). The VE's SVP determination for the data-examination clerk position was therefore not in conflict with the ALJ's RFC determination.

### c.  The DOT Reasoning Level

Plaintiff's final challenge to the ALJ's reliance on the VE's testimony regarding the data-examination clerk position is that the Level 3 reasoning skills of a data-examination clerk requires mental capabilities greater than those the ALJ described in his formulation of Plaintiff's RFC to the VE.

Plaintiff's only relevant nonexertional limitation is to "unskilled" work. AR 91. Plaintiff's RFC does not include any additional mental limitations.[3] Unskilled work is "work

---

[3] Plaintiff has failed to point to a specific reasoning limitation in the ALJ's RFC that is inconsistent with the VE's testimony. If, for example, the Plaintiff's RFC explicitly limited the Plaintiff to "simple, repetitive tasks" there might be a colorable argument that the VE's testimony conflicted with the DOT reasoning level for a data-examination clerk. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding remand appropriate where the ALJ failed to resolve a conflict between VE's assessment that Plaintiff could perform a job

which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Level 3 reasoning requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT 209.387-022, *available at* 1991 WL 671788.

The parties do not cite and the Court did not find precedent from the Ninth Circuit addressing whether job titles with a Level 3 reasoning skill are inconsistent with a RFC limitation for "unskilled work." *Myers v. Colvin*, No. 1:12-CV-00378-LJO-GSA, 2013 WL 3481689, at *14 (E.D. Cal. July 10, 2013) ("[T]here are no published Ninth Circuit cases explaining how to apply the DOT's Reasoning Level definitions."). The "unskilled" designation "speaks more to the issue of the level of vocational preparation necessary to perform the job rather than the issue of the job's simplicity 'which appears to be more squarely addressed by the [reasoning level] ratings.'" *Gonzales v. Astrue*, No. 1:10-cv-01330-SKO, 2012 WL 14002, at *13 (E.D. Cal. Jan. 4, 2012) (citing *Hall–Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004)). In this case, the VE testified that the data-examination clerk title was one that could be "learned in less than 30 days" and was "unskilled." AR 143-44. In that regard,

---

with a Level 3 reasoning and ALJ's finding that Plaintiff was limited to "simple and routine work tasks"); *Etter v. Astrue*, No. CV 10-582-OP, 2010 WL 4314415, at *3 (C.D. Cal. Oct. 22, 2010) (DOT jobs assigned Level 3 reasoning conflict with a limitation to simple, repetitive work). The ALJ's RFC of "unskilled work" is supported by substantial evidence in the record given the Plaintiff's capacity to complete both "simple unrushed tasks and routines and occasionally more familiar, complex activities." AR 93; *see Valentine*, 574 F.3d at 691.

PAGE 21 – OPINION AND ORDER

the VE's testimony was consistent with the DOT and falls within the Plaintiff's RFC.[4] *See Massachi*, 486 F.3dat 1153.

**D.  Lay Testimony of Eric Hankins**

Plaintiff argues that the ALJ gave insufficient weight to the testimony of Plaintiff's boyfriend, Eric Hankins. Plaintiff argues that the ALJ did not sufficiently consider Mr. Hankins' testimony and provide an adequate reason to reject the testimony.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina*, 674 F.3d at 1114. The ALJ must provide "germane reasons" when rejecting lay testimony. *Molina*, 674 F.3d at 1114. The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Id.*

Mr. Hankins testified that he had "known the claimant for many years and had lived with her for less than two years." AR 91. He indicated that "she does little around the home and forgets things frequently." *Id.* The ALJ concluded that the "witness' testimony regarding the claimant's limitations is accepted as descriptive of the witness' perceptions, however, it does not provide sufficient support to alter the residual functional capacity arrived at herein." AR 91-92. Here, the ALJ provided a germane reason to reject Mr. Hankin's testimony. Mr. Hankin's testimony was predicated on Plaintiff's self-reported symptoms, which the ALJ concluded were "not fully consistent with the medical evidence and other evidence in the record" and were not credible. AR 92. This is an appropriate rationale for discounting lay witness testimony. *See Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one

---

[4] Assuming, *arguendo*, that the ALJ's reliance on the VE testimony was in error, this error would not affect the ALJ's ultimate non-disability determination because Plaintiff is still able to perform the job of merchandise marker. *Ludwig*, 681 at 1055; *see supra,* section C.1.

witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."); *see also Valentine*, 574 F.3d at 694 (same). Additionally, the ALJ's conclusion that Mr. Hankins' testimony conflicted with the medical evidence was also a "germane reason" to reject the testimony. *Bayliss*, 427 F.3d at 1218.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is AFFIRMED.


**IT IS SO ORDERED**.

DATED this 4th day of September, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge